Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DUI, INC. "DBA" IMAGE FIRST<br><br>Peticionario<br><br>V.<br><br>NATURAL VENTURES P.R. LLC, PUERTO RICO INDUSTRIAL COMMERCIAL HOLDINGS, LLC. "PRICH"<br><br>Recurrida | KLCE202401284 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2021CV03574 (802)<br><br>Sobre:<br>COBRO DE DINERO |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de febrero de 2025.

La peticionaria, DUI Inc., solicita que revisemos la denegatoria del Tribunal de Primera Instancia (TPI) a una enmienda a la demanda para introducir una causa de acción por dolo contractual.

La recurrida, Natural Venture PR, LLC en adelante, Natural, presentó su oposición al recurso.

Los hechos que preceden la controversia que atendemos hoy son los siguientes.

### I.

El 9 de junio de 2021, la peticionaria presentó una demanda de cobro de dinero y ejecución de cláusula penal contra Puerto Rico Industrial Commercial Holdings Biotech y Natural Ventures PR, LLC. La peticionaria hizo las alegaciones siguientes. El 27 de julio de 2020, Natural contrató sus servicios de lavandería especializada y la renta de materiales y se obligó a pagarle $144.72 semanalmente por setenta y dos (72) meses. Durante el año 2020, Natural traspasó a Puerto Rico Industrial la administración del negocio. El 7 de enero de 2021, Puerto Rico Industrial canceló el contrato unilateralmente y dejó al descubierto

el pago de las doscientas noventa y cinco (295) semanas restantes. Al momento de presentada la demanda, la deuda era de veintiún mil ochocientos cuarenta y seis dólares con treinta centavos ($21,846.30), incluyendo facturas pendientes, penalidades e intereses acordados. El contrato incluye una penalidad aplicable en caso de descontinuarse la utilización de los servicios, de forma temprana y previo a la culminación del acuerdo. La penalidad pactada es equivalente al cuarenta por ciento (40%) de las semanas al descubierto. La peticionaria reclamó el pago de una deuda de veintiún mil ochocientos cuarenta y seis dólares con treinta centavos ($21,846.30), líquida y exigible y alegó que sus gestiones de cobro fueron infructuosas. Además, reclamó el pago del quince por ciento (15%) de gastos legales e intereses acumulados, según lo pactado. Véase Demanda, págs. 86 a 89 del apéndice.

Puerto Rico Industrial alegó que nunca contrató con la peticionaria y que no asumió el contrato objeto de la demanda, ni las deudas que Natural pudiera tener con la peticionaria. Por su parte, Natural, en la contestación a demanda, eximió de responsabilidad a Puerto Rico Industrial. Aunque reconoció la existencia del contrato, alegó que tuvo que cerrar operaciones porque no pudo renovar sus licencias. Además, argumentó que el contrato lo redactó la peticionaria y sus cláusulas no eran claras. Véase págs. 90 a 93 del apéndice. Durante el pleito, todas las partes solicitaron la solución de la controversia a su favor a través de sentencia sumaria.

El 27 de febrero de 2023, el TPI dictó sentencia sumaria a favor de Puerto Rico Industrial y Natural. El 17 de abril de 2023, enmendó su sentencia. El foro primario concluyó que el contrato suscrito entre Natural Venture y DUI era de adhesión y que sus cláusulas eran ambiguas. Así interpretó el contrato a favor de Natural Venture, debido a que no tuvo participación en su redacción. Según el TPI, por un lado el contrato permitía la cancelación con noventa (90) días de anticipación y por otro contenía una cláusula penal con una

desproporción económica que debía interpretarse restrictivamente. El TPI concluyó que la cláusula penal era desorbitada, excesiva y no se podía sostener. Véase, pág. 23 del apéndice de la oposición.

Conforme a lo anterior, el TPI exoneró de responsabilidad a Natural Venture, entendiendo que la causa del contrato se extinguió, porque la Junta Reglamentadora del Cannabis no le renovó la licencia. El foro primario resolvió que DUI no podía pretender que Natural Ventures continuara pagándole una cantidad semanal, sin recibir ningún servicio. No obstante, ordenó a Natural Venture pagar a la peticionaria mil cuatrocientos sesenta dólares con setenta y siete centavos ($1,460.77), por los servicios ya prestados. El TPI también exoneró de responsabilidad a Puerto Rico Industrial, porque se estipuló que no fue parte del contrato y tampoco asumió dicho contrato al momento de adquirir los activos. Véase, Sentencia Enmendada, págs. 23 a 44 del apéndice.

Inconforme con lo anterior, DUI recurrió ante el foro apelativo, quien el 7 de septiembre de 2023 revocó la determinación sumaria, entendiendo que persistían hechos esenciales en controversia. El foro apelativo advirtió que las fechas de vencimiento de las licencias de Natural que constaban en la sentencia del TPI eran incorrectas. Sobre dichas fechas aclaró que las licencias no habían vencido en el mes de noviembre de 2020 sino, la licencia de cultivo, el 15 de noviembre de 2018 y la de manufactura, el 28 de noviembre de 2018. Además, hizo hincapié en que, de la declaración jurada del administrador de Natural Venture, surgía que la Junta Reglamentadora denegó las solicitudes de renovación de licencias, ordenó el cierre del establecimiento y el embargo administrativo de todos los productos de cannabis medicinal, previo a la otorgación del contrato. Por tal razón, concluyó que no se trataba de que la causa del contrato se frustró, porque, para que así sea, es necesario que el hecho inesperado sea posterior a la obligación.

El foro apelativo expresó la necesidad de celebrar un juicio plenario para determinar si Natural era responsable del incumplimiento contractual, o se debió a un suceso imprevisible. Razonó que la responsabilidad de Natural y de Puerto Rico Industrial, si alguna, estaba sujeta a ese hecho. Por lo que concluyó que había que determinar en una vista en su fondo, si Puerto Rico Industrial adquirió el contrato. Por último, dictaminó que la cláusula de cancelación no era ambigua y que correspondía al TPI determinar si procedía ajustar o moderar su alcance. Como consecuencia, dejó sin efecto la imposición de honorarios.

El 22 de diciembre de 2023, el Tribunal de Apelaciones dictó Sentencia en Reconsideración El tribunal resolvió que Puerto Rico Industrial no era responsable de las obligaciones de Natural Venture, porque el vendedor: (1) asumió la responsabilidad exclusiva de las obligaciones, gravámenes y responsabilidades no consentidas por el comprador en el contrato y (2) se obligó a indemnizar al comprador por cualquier pérdida, demanda, responsabilidad, daño o gasto indistintamente de si se trata o no de una demanda instada por un tercero. Así confirmó la determinación del TPI de exonerar de responsabilidad a Puerto Industrial y dictar sentencia sumaria a su favor. No obstante, el resto de su sentencia del 7 de septiembre de 2023 permaneció en vigor en lo que respecta a Natural Venture.

El **10 de septiembre de 2024,** la peticionaria pidió autorización para enmendar la demanda con el propósito de incluir una causa de acción por dolo contractual. La peticionaria alegó que **el 21 de agosto de 2024,** advino en conocimiento de que Natural contrató sus servicios, a sabiendas de que ante la Junta Reglamentadora del Cannabis se ventilaba un proceso legal por fraude y falsa representación. En cuanto al momento en que solicitaba enmendar la demanda, DUI adujo que la Junta le proveyó esa información, en respuesta a una orden emitida

por el tribunal el 12 de julio de 2024 y fue entonces, cuando advino en conocimiento.

Natural se opuso a la enmienda a la demanda porque: (1) la reclamación por dolo era inconsistente con la alegación de incumplimiento contractual y estaba prescrita, (2) la enmienda le causaría un perjuicio indebido porque la obligaba a reabrir el descubrimiento de prueba e incurrir en nuevos gastos y (3) la demandante conocía los problemas de Natural desde el mes de octubre de 2022.

El TPI declaró NO HA LUGAR la solicitud de enmienda a la demanda. Según el TPI, el permitir una nueva reclamación conllevaría reabrir el descubrimiento de prueba que culminó el 6 de agosto 2022 y retrasaría más los procedimientos. Por otro lado, advirtió que la reclamación por dolo contractual era incompatible con los remedios solicitados en la demanda original.

La peticionaria solicitó reconsideración, a lo que se opuso la recurrida. El TPI denegó la reconsideración.

Inconforme presentó este recurso en el que alega que:

> ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE ENMIENDA BASADO EN QUE EL DESCUBRIMIENTO DE PRUEBA HABÍA CONCLUIDO A PESAR DE QUE EL PROPIO TRIBUNAL, EMITIÓ UNA ORDEN PARA DESCUBRIR PRUEBA ANTE LA JRCM AL CONCLUIR QUE LA CAUSA DE ACCIÓN POR DOLO CONTRACTUAL DE LA DEMANDA ENMENDADA ES INCOMPATIBLE E INCONSISTENTE CON LA CAUSA DE ACCIÓN POR INCUMPLIMIENTO DE CONTRATO DE LA DEMANDA Y CONCLUIR QUE LA ENMIENDA ALTERA RADICALMENTE EL ALCANCE Y NATURALEZA DEL CASO.

## II.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491, hoy conocido como Ley de Recursos Extraordinarios. Véase también *Mun. Caguas v. JRO Construction, Inc.,*

201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728 (2016). Aunque el certiorari se reconoce como un recurso discrecional la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* supra, pág. 729; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

## III.

La parte peticionaria solicita revisemos la denegatoria del Tribunal de Primera Instancia a autorizar la enmienda a la demanda para incluir la nueva causa de acción. No obstante, en ausencia de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra,* no intervendremos en esta etapa procesal con la determinación recurrida.

## IV.

Por lo antes expuesto se deniega la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones